**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reina Patocs, | No. CV-20-01257-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Automatic Data Processing Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendants ADP LLC, *et al.*'s[1] ("ADP") Motion for Summary Judgment (Doc. 42, Mot.), to which Plaintiff Reina Patocs ("Ms. Patocs") filed a Response (Doc. 47, Resp.), and Defendant filed a Reply (Doc. 50, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion.

## I.    BACKGROUND

Plaintiff is an African American female who worked for ADP from October 16, 2017, until she was terminated on January 22, 2019. (Doc. 1, Ex. A, Compl. ¶¶ 9, 13, 52; Doc. 43, Defendant's Statement of Undisputed Material Facts ("DSOF") ¶ 3.) She was 21 years of age when she was hired at ADP, and 22 years old when she was terminated. (Doc. 48, Plaintiff's Statement of Facts ("PSOF") ¶ 110.) Ms. Patocs worked as an Associate in ADP's Small Business Services ("SBS") group in Tempe, Arizona from the

---

[1] Hereinafter, the Court refers to Defendants ADP LLC and ADP Incorporated collectively as "Defendant."

time she was hired until March 2018, when she was promoted to "Team Lead." (DSOF ¶¶ 1, 3, 10, 12; Compl. ¶¶ 9-10.) Team Leads reported to Vice President Michael Shepard ("Mr. Shepard"), who reported to Andrea Bereal ("Ms. Bereal"), Vice President, General Manager of SBS. (DSOF ¶¶ 7, 8, 12.) Client Services Director Walter Nettles ("Mr. Nettles") assisted Mr. Shepard with the Team Lead program. (DSOF ¶ 9.)

Plaintiff alleges that almost immediately after she began reporting to Mr. Shepard, she was "subject to both racial and sexist comments" from Mr. Shepard. (Compl. ¶ 13.) She claims that Mr. Shepard made comments about her physical appearance, telling her on some occasions that she looked "too boney," on others that she did not look "boney," and also that she was "young and pretty." (Compl. ¶ 13.) Plaintiff also alleges that Mr. Shepard referred to her as his "work wife," and told her that she was hired because of "Diversity and Inclusion and [t]hat's the problem with D and I." (PSOF ¶¶ 58, 93 (citing Ex. B, Deposition of Sonya Everett ("Everett Dep.") at 105:12-107:16).) Plaintiff felt "extremely uncomfortable" as a result of Mr. Shepard's comments. (Compl. ¶ 15.)

Following Plaintiff's promotion to Team Lead, Mr. Nettles allegedly received complaints that she was (1) abrasive when providing Associates with feedback; (2) dishonest; and (3) unwilling to "own issues." (DSOF ¶ 17, citing Declaration of Walter Nettles ("Nettles Dec.") ¶¶ 23-31.) Subsequently, Plaintiff was subjected to "informal coaching" by Mr. Shepard on July 11, 2018, during which she alleges he called her "fucking crazy" and berated her. (PSOF ¶ 16.) Plaintiff claims that it was this informal coaching that spurred her complaints to Team Manager Stacey Crawley ("Ms. Crawley") on July 11, 2018, and Mr. Nettles on July 12, 2018. (PSOF ¶¶ 16, 29, 104, 105.)

On July 13, 2018, Ms. Patocs was brought in for a formal coaching with Mr. Shepard and Mr. Nettles, and she alleges that the feedback she received during that session was contradictory to the feedback she received elsewhere. (PSOF ¶ 37.) For example, Plaintiff received a 4.2 out of 5.0 on her performance review, and aside from the informal and formal coaching sessions on July 11 and July 13, 2018, respectively, Plaintiff never received any information to suggest that her review was inaccurate. (PSOF ¶ 27 (citing Ex. A,

Declaration of Reina Patocs ("Patocs Dec.") ¶ 8).) In fact, Ms. Patocs received the same score on her performance review as all of the other Team Leads. (DSOF ¶ 26.)

Between July and September 2018, Ms. Patocs attended follow-up coaching sessions. (PSOF ¶ 39.) During both the original formal coaching and each of the follow-up sessions, Plaintiff was required to draft notes based on what was dictated to her by Mr. Shepard. (PSOF ¶ 40.) During the July 16, 2018 follow-up coaching, Plaintiff alleges that Mr. Shepard dictated an apology to himself, which she transcribed in her notes. (PSOF ¶¶ 63-64.)

In the fall of 2018, ADP promoted Team Leads who were "ready enough" to become Team Managers. (DSOF ¶ 41.) Although Plaintiff had been with ADP for approximately the same amount of time as the Team Leads who were promoted and claims that she was given more difficult assignments than other Team Leads, Mr. Shepard specifically told her that she would not be allowed to seek a Team Manager position. (PSOF ¶¶ 41, 43, 47.) Instead, Plaintiff was given a short-term project where her job was to interview and train new hires for a large acquisition (hereinafter "SA Project"), even though she had no acquisition experience. (PSOF ¶ 49.)

Defendant alleges, and Plaintiff disputes, that around this time ADP leadership and Plaintiff's coworkers perceived her as having an "attitude" about the assignments she was given. (DSOF ¶ 51; PSOF ¶ 51.) On January 4, 2019, Ms. Crawley told Mr. Shepard about Plaintiff's complaints regarding his discrimination and retaliation against her. (PSOF ¶ 53.) Subsequently, on January 7, 2019 Plaintiff alleges that Mr. Shepard told her that she was going to be answering phone calls as a "punishment." (PSOF ¶ 51; Patocs Dec. ¶ 18.) On January 7, 2019, Plaintiff also attended additional coaching with Mr. Shepard, Mr. Nettles, and Cherie Bond ("Ms. Bond"), Director, Human Resource Business Partner. (DSOF ¶ 57.) She alleges that during that coaching session she was told that her desk was going to be moved to a location in front of the bathrooms so that other employees could see her "punishment." (PSOF ¶ 13.) That same day, Plaintiff made a complaint to Ms. Bond

alleging age discrimination, retaliation, and harassment, and stating that she felt physically "unsafe" reporting to Mr. Shepard. (DSOF ¶ 58.)

Following Ms. Patocs' complaint, Sonya Everett ("Ms. Everett"), ADP's Associate Relations Manager, initiated an internal investigation. (DSOF ¶ 63.) Ultimately, Ms. Everett found that Plaintiff's allegations were uncorroborated. (DSOF ¶ 66; *see also* PSOF ¶ 66.) Ms. Everett specifically observed that the notes Plaintiff provided to her were missing the July 16, 2018 coaching session and did not contain Plaintiff's "apology" to Mr. Shepard. (DSOF ¶ 64.) Ms. Everett determined that Plaintiff should be discharged for misleading an internal investigation. (PSOF ¶¶ 73-74, 77; DSOF ¶ 73.) Plaintiff was terminated on January 22, 2019. (PSOF ¶ 73.)

On February 14, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 55.) Subsequently, on March 10, 2020, Plaintiff requested that the EEOC issue a Notice of Right to Sue, which the EEOC issued on April 30, 2020. (Compl. ¶ 56.) On May 20, 2020, Plaintiff initiated this action in the Superior Court of Arizona, Maricopa County, alleging claims under 42 U.S.C. § 1981 and Title VII. (Doc. 1, Removal.) On June 25, 2020, Defendants removed the action to this Court pursuant federal question jurisdiction. (Removal at 2 (citing 28 U.S.C. §§ 1331, 1367(a), 1441).) Defendants now move for summary judgment on all of Plaintiff's claims, as well as their Twelfth Affirmative Defense.

## II.   LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue"

1    of material fact arises only "if the evidence is such that a reasonable jury could return a
2    verdict for the nonmoving party." *Id.*

3         In considering a motion for summary judgment, the court must regard as true the
4    non-moving party's evidence, if it is supported by affidavits or other evidentiary material.
5    *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party
6    may not merely rest on its pleadings; it must produce some significant probative evidence
7    tending to contradict the moving party's allegations, thereby creating a material question
8    of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative
9    evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l*
10   *Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

11        "A summary judgment motion cannot be defeated by relying solely on conclusory
12   allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.
13   1989). "Summary judgment must be entered 'against a party who fails to make a showing
14   sufficient to establish the existence of an element essential to that party's case, and on
15   which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d
16   1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

17   **III.   ANALYSIS**

18        Plaintiff brings discrimination, retaliation, and harassment claims under both Title
19   VII and 42 U.S.C. § 1981. Title VII prohibits employers from discriminating against an
20   individual based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a).
21   Similarly, § 1981 prohibits discrimination in the "benefits, privileges, terms, and
22   conditions of employment." 42 U.S.C. § 1981(b). The standards for analyzing § 1981
23   claims are the same as those applicable in Title VII disparate treatment cases. *Surrell v.*
24   *Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). However, Title VII requires
25   that the Plaintiff exhaust administrative remedies, such as filing a claim with the EEOC,
26   before bringing a private action for damages, while § 1981 does not have the same
27   requirement. *Id.*

28

Because Plaintiff asserts, and Defendants do not dispute, that she filed a charge with the EEOC on February 14, 2019, less than one month after her termination, and the EEOC provided Plaintiff with a Notice of Right to Sue on April 30, 2020, the Court finds that Plaintiff meets the requirements of Title VII exhaustion. (*See* Compl. ¶¶ 55-56.) Accordingly, the Court moves forward to discuss the merits of Plaintiff's discrimination, retaliation, and harassment claims.

### A.      Plaintiff's Discrimination Claims

Plaintiff brings race and sex discrimination claims under both Title VII and 42 U.S.C. § 1981. The standards for a *prima facie* discrimination claim are the same under § 1981 and Title VII. *Surrell*, 518 F.3d at 1105 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Under Title VII, an employer may not "discriminate against an individual with respect to [her] . . . terms, conditions, or privileges of employment" because of her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). "This provision makes 'disparate treatment' based on [race, color, religion, sex, or national origin] a violation of federal law." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061–62 (9th Cir. 2002).

A plaintiff may present either direct or circumstantial evidence to prove her employment discrimination case. Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2006). If the plaintiff fails to produce direct evidence, the Court may evaluate circumstantial evidence using the burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*. 433 U.S. 792, 802–805 (1973). Under that framework, first, the plaintiff must establish a *prima facie* case of unlawful discrimination by showing that (1) she belongs to a protected class; (2) she was performing her job satisfactorily (or was qualified for a position for which she applied); (3) she was subjected to an adverse employment action; and (4) similarly situated [individuals outside her protected class] were treated more favorably." *Cozzi v. Cnty. of Marin*, 787 F. Supp. 2d 1047, 1057 (N.D. Cal. 2011) (citing *Chuang v. Univ. of Cal. Davis, Bd. of*

*Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). The degree of proof necessary to establish a *prima facie* case for a Title VII claim on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.* (internal citations and quotations omitted).

"If the plaintiff establishes a *prima facie* case, the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action . . . . If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Villiarimo*, 281 F.3d at 1062 (internal citations and quotations omitted). A plaintiff may rely on circumstantial evidence to demonstrate pretext, but such evidence must be both specific and substantial. *Id.*

As a preliminary matter, the Court notes that the parties disagree as to whether there is any direct evidence to support Plaintiff's discrimination claim. (*See* Mot. at 5; Resp. at 3.) Plaintiff alleges that there is direct evidence of bias in this case because Mr. Shepard was involved in all key decisions regarding her employment status and stated that Plaintiff only had her job due to Diversity and Inclusion, and "that's what's wrong with D and I." (Resp. at 3 (citing DSOF ¶¶ 7, 10, 12, 19, 24-26, 33, 56; PSOF ¶¶ 82, 90, 93).) Defendant argues that this comment is not direct evidence of discrimination because it is not tied to any adverse action, and therefore requires an inference of discrimination. (Mot. at 5-6, n. 2.) Mr. Shepard's alleged comment was made in reference to her promotion to Team Lead, and therefore, Defendant proffers, "supports a class bias *in favor* of Plaintiff." (Mot. at 6, n. 2 (emphasis in original).) While the Court finds Defendant's framing of Mr. Shepard's alleged comment questionable at best, it nonetheless agrees with Defendant that it is not direct evidence as defined in *Vasquez*. However, a reasonable fact-finder could draw inferences from the comment when determining what motivated Defendant to take

1  adverse employment actions against Plaintiff. Therefore, it is circumstantial evidence that
2  is relevant to her discrimination claim. Since all of Plaintiff's evidence is circumstantial,
3  the Court will analyze it under the *McDonnell Douglas* framework.

> **1.    Plaintiff Can Establish a *Prima Facie* Case of Title VII Race or Sex Discrimination**

6    Under the *McDonnell Douglas* framework, "[t]he requisite degree of proof
7  necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal
8  and does not even need to rise to the level of a preponderance of the evidence." *Chuang*,
9  225 F.3d at 1124 (citation omitted). The parties do not dispute that Plaintiff was part of a
10 protected class based on her race and sex. Defendant instead argues that Plaintiff has not
11 shown that she was subjected to an adverse employment action other than her termination,
12 which it contends was justified based on her performance, which was not meeting its
13 legitimate expectations. (Mot. at 7, 9.) Defendant also claims that Plaintiff has not shown
14 that similarly situated individuals outside her protected class were treated more favorably.
15 (Mot. at 11-12.)

> **a.    Adverse Employment Action**

17    For the purposes of a discrimination claim, an adverse employment action is one
18 that materially affects the compensation, terms, conditions, or privileges of employment.
19 *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *Chuang*, 225 F.3d at 1126.
20 The standard for an adverse employment action for the purposes of a discrimination claim
21 is different from that for a retaliation claim, which the Court discusses in more detail below.
22 The Court, in construing the evidence in a light most favorable to Plaintiff, will consider
23 whether any of the incidents Plaintiff alleges could qualify as an adverse employment
24 action.

25    First, the Court notes that the parties agree that Plaintiff's termination may qualify
26 as an adverse employment action. (*See* Mot. at 7.) The Court agrees with both parties, so
27 does not discuss it in depth here.

28

Defendant goes on to challenge each of Plaintiff's alleged adverse actions. Defendant argues that (1) the "coaching and scrutiny" Plaintiff experienced; (2) the fact that Mr. Shepard made Plaintiff "feel uncomfortable" through his alleged sexual harassment; (3) Plaintiff's assignment to a less-desirable desk space; (4) Plaintiff's assignment to phone duty; (5) Plaintiff's placement on paid leave pending the internal investigation; (6) an inadequate internal investigation; and (7) assigning Plaintiff the SA Project, and later removing her from that project, are not adverse employment actions as a matter of law. (Mot. at 7.) Plaintiff challenges Defendant's characterizations of the actions but does not cite any case law to suggest that Defendant's actions were in fact adverse. (Resp. at 4-10.) In its analysis of Plaintiff's discrimination claim, the Court considers only the alleged adverse actions that Plaintiff contends are discriminatory in her Response. (*See* Resp. at 13.) Plaintiff maintains that all the actions, with the exception of the second action, are retaliatory, so the actions not discussed here are addressed in the Retaliation section of this Order.

To support its contention that the "coaching and scrutiny" Plaintiff experienced was not an adverse action, Defendant cites *Negley v. Judicial Council of California*, where the Court held that "barrages" of emails regarding plaintiff's conduct and the scrutiny she was subjected to were not adverse employment actions. No. C 08-03690 MHP, 2010 WL 11545605, at *8 (N.D. Cal. June 21, 2010). Plaintiff cites to no cases in which a court found additional coaching and scrutiny to be an adverse action for the purposes of a Title VII discrimination claim, nor could the Court find any such cases in its own research. (*See generally* Resp.) The Court agrees with Defendant that this is not an adverse action as a matter of law.

Next, Defendant asserts that the fact that Mr. Shepard made Plaintiff "feel uncomfortable" is not an adverse action as a matter of law. (Mot. at 7.) Plaintiff takes issue with Defendant's word choice and argues that it is "a gross mischaracterization of Plaintiff's claims of sexual harassment." (Resp. at 4.) However, the Court agrees with Defendant. While these comments may go to a hostile work environment claim, they do

1   not rise to the level of adverse employment action. *See Reyes v. San Francisco Unified*

2   *School District,* No. 11-cv-04628-YGR, 2012 WL 4343784, at *9 (N.D. Cal. Sept. 20,

3   2012) ("feeling uncomfortable is not an adverse employment action"). The facts of *Reyes*

4   are distinguishable from those at hand,[2] but Plaintiff makes no attempt to distinguish the

5   facts of that case and cites no affirmative case law to support an argument that

6   Mr. Shepard's alleged comments should be construed as an adverse employment action.

7       Defendant relies on *Brown v. Dignity Health* to support its argument that its

8   allegedly inadequate internal investigation was not an adverse action. No. CV-18-03418-

9   PHX-JJT, 2020 WL 3403088, at *9 (D. Ariz. June 19, 2020). Plaintiff argues that

10  Defendant's internal investigation was not just inadequate, but also "biased, discriminatory

11  and retaliatory." (Resp. at 5.) However, this argument is conclusory. Plaintiff again fails to

12  cite any cases where courts have found either that an inadequate internal investigation

13  constitutes an adverse action, or that an allegedly "biased" investigation is different from

14  an "inadequate" investigation for the purposes of the Court's analysis. Thus, the Court must

15  agree with Defendant—its alleged failure to adequately investigate Plaintiff's claims is not

16  an adverse action.

17      Defendant further argues that its failure to promote Plaintiff is not an adverse action

18  because, generally, an employee must have applied for a promotion for such action to be

19  adverse. (Mot. at 7 (citing *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir.

20  1988)).) Defendant acknowledges that in some circumstances, failure to promote can be an

21  adverse employment action under a "deterred applicant" theory but argues that such a

22  theory is inapplicable here. The Supreme Court has outlined the "deterred applicant"

23  theory, or "futility" doctrine, as follows: "[w]hen a person's desire for a job is not translated

24  into a formal application solely because of his unwillingness to engage in a futile gesture

25  he is as much a victim of discrimination as is he who goes through the motions of

26  _____

27  [2] In *Reyes*, offensive comments were made, but not by the plaintiff's supervisor or an administrator, and they were not directed at the plaintiff. 2012 WL 4343784, at *9. Here, Mr. Shepard was Plaintiff's supervisor, and his alleged comments about her physical

28  appearance, and also his comment that she was his "work wife" were clearly directed at her. (PSOF ¶¶ 58, 68, 88, 104.)

submitting an application." *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977). To determine the validity of a plaintiff's claim that application would have been futile, courts look to the attendant facts and circumstances of the individual case, considering "whether a plaintiff has alleged facts that, taken as true, support the inference that it would have been futile for him to apply." *Hill v. Beers*, No 3:12-CV-00574-AC, 2014 WL 950168, at *9 (D. Or. Mar. 11, 2014) (quoting *Wynn v. Nat'l Broadcasting Co., Inc.*, 234 F. Supp. 2d 1067, 1099 (C.D. Cal. 2002)). The company must have a "consistently enforced policy" of discriminating against a certain group of individuals for a futility claim to survive. *Teamsters*, 431 U.S. at 365. The Ninth Circuit has required plaintiffs to show a "clear pattern of discrimination" to prevail on the futility doctrine. *Hill v. Beers*, No. 3:12-CV-00574-AC, 2014 WL 950168, at *9 (D. Or. Mar. 11, 2014) (collecting cases, citations omitted).

Plaintiff argues that the case law Defendant cites is distinguishable, because she was told by Mr. Shepard that she should not apply. (PSOF ¶ 43.) Plaintiff also points out that all of her white colleagues were promoted, which she suggests illustrates a policy of discrimination. (Resp. at 6.) The Court finds that Plaintiff cannot establish that Defendant had clear pattern of discrimination against African American or female employees. Not only does Plaintiff once again fail to cite any case law to support her argument, but she also glosses over the fact that she was promoted to the Team Lead position. (DSOF ¶ 10.) Additionally, the facts show that Stephanie Bitterman, a woman, was the first Team Lead promoted to Team Manager. (DSOF ¶¶ 10, 41.) Further, many of Plaintiff's superiors were women and/or African American. (DSOF ¶¶ 8, 57, 62-63, 77.) Thus, considering the evidence proffered, the Court cannot find that Defendant had a "consistently enforced policy" of discriminating against female or African American employees. *See Hill*, 2014 WL 950168, at *10.

### b.   Job Performance

Because the Court finds that for the purposes of Plaintiff's discrimination claim, the only adverse action she suffered was her termination, she must also show that she was performing according to ADP's legitimate expectations at the time she was fired.

Defendant argues that Plaintiff was not meeting its legitimate expectations for several reasons. (Mot. at 9-10.) First, Defendant cites Plaintiff's performance issues, such as her "abrasiveness toward Associates," and notes that she was called in for coaching sessions to address these concerns. (Mot. at 9-10 (citing DSOF ¶¶ 17, 21-23, 47, 51-53).) Defendant also contends that it had a "legitimate expectation of honesty," which Plaintiff did not meet when she failed to provide complete "documentation" to Ms. Everett following her complaint about Mr. Shepard, and when Ms. Everett's investigation failed to corroborate Plaintiff's version of events.

In her Response,[3] Plaintiff highlights her performance review, on which she received a 4.2 out of 5.0. (Resp. at 9; DSOF ¶ 26, Ex. 17.) This score is identical to those of the other Team Leads Mr. Shepard supervised. (DSOF, Exs. 18, 19.) Additionally, the review is for the period ending June 30, 2018, during which time Defendant claims it had already received the same complaints about Plaintiff that were a factor in her termination, and she had already been informally coached. (DSOF ¶¶ 17, 19.) Mr. Shepard states he decided to give Plaintiff an inflated review because he "remained hopeful" that she could improve (DSOF ¶ 27), but Plaintiff's review is dated September 3, 2018, nearly two months after Plaintiff's first formal coaching session on July 13, 2018, and two follow-up coaching sessions. (DSOF ¶ 35, Ex. 17.)

Plaintiff also points to evidence that challenges Defendant's contention that she was not meeting its legitimate expectation of honesty. Ms. Everett found that Plaintiff was behaving dishonestly in part because she provided Ms. Everett with emails documenting her first formal coaching on July 13, 2018, as well as the second, third, and fourth follow-

---

[3] Plaintiff's briefing does not directly address Defendant's contention that she was not performing to its legitimate expectations, but she does raise arguments to rebut Defendant's assertion in her analysis of its failure to promote her to Team Manager. (Resp. at 9.)

ups to that coaching, but did not submit emails documenting the first follow-up coaching on July 16, 2018, which Defendant characterizes as an "apology." (DSOF ¶ 64.) Plaintiff claims she omitted the notes from the July 16, 2018 follow-up by accident, and also stated during her deposition that she was "directed" to apologize during that coaching session, despite the fact that she did not feel that an apology to Mr. Shepard was warranted. (PSOF ¶ 38.) An examination of the notes in question supports Plaintiff's claim that the text was dictated. The numbered list reads:

> 14. Apologize for reaction and emotional response
> 15. Identify that it had nothing to do with Michael [Shepard]
> …
> 16. Thank Michael for hard work and dedication to not only my development but also other TL's development.

(DSOF, Ex. 24 at 4 (erroneously labeled "Exhibit 22").) Ms. Everett never followed up with Mr. Shepard about Plaintiff's claim that he dictated the "apology" to her. (PSOF ¶ 109.) Notably, the emails that Mr. Shepard sent to Ms. Bereal, Ms. Bond, and Susanna Larson in advance of the January 7, 2019 formal coaching did not contain Plaintiff's notes from the July 16 follow-up session either, but there is no evidence that Defendant questioned Mr. Shepard's honesty based on this omission. (PSOF ¶ 90, Ex. E.)

For the foregoing reasons, Plaintiff is able to show that she was performing to Defendant's legitimate expectations for the purposes of her *prima facie* case.

### c.    Similarly Situated Employees

Individuals are similarly situated when "they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641. Defendant asserts that Plaintiff "has failed to identify that similarly situated comparators received preferential treatment." (Mot. at 11.)

Plaintiff suggests that Tyler Popescu (Caucasian, male), Robert Perkins (Caucasian, male), and Ms. Bitterman (Caucasian, female),[4] were all similarly situated employees. (*See*

---

[4] Plaintiff also mentions Benjamin Alickovic (Caucasian, male) and J.T. Landenberger (Caucasian, male) in her briefing. However, neither Mr. Alickovic or Mr. Landenberger reported to Mr. Nettles or Mr. Shepard, so cannot be similarly situated. *See EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1279, 1292 (D. Nev. 2009) ("[T]he individuals used for comparison must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." (internal quotations omitted)).

*generally* PSOF; Resp. at 10.) Defendant asserts that these individuals were not similarly situated to Plaintiff because there is no evidence that they engaged in conduct similar to that of Plaintiff, they had more management experience than she did, and were hired by Defendant prior to Plaintiff. (Mot. at 12.) Defendant also observes that Ms. Bitterman, a woman, was the first Team Lead to be promoted. (Mot. at 12; DSOF ¶ 41.)

In support of her argument, Plaintiff proffers that she had prior management experience, while Mr. Popsecu did not, and this illustrates that Mr. Popescu was treated more favorably than Plaintiff. (Resp. at 10.) Mr. Popescu's resume shows that he worked as a Shift Leader at Dunkin Donuts for more than two years, spent four months as an account manager at another company, and then worked as a Portfolio Consultant for less than a year before joining Defendant. (DSOF, Ex. 15.) In addition to experience as a Medical Scribe and Administrative Assistant, Plaintiff worked as a Human Resources and Customer Relations Coordinator at a car dealership prior to joining Defendant. (DSOF, Ex. 14.) While it is incorrect for Plaintiff to claim that Mr. Popsecu did not have managerial experience, it is also incorrect for Defendant to assert that Plaintiff lacked managerial experience. The description of her role at the car dealership on Plaintiff's resume reflects that she performed managerial duties. (DSOF, Ex. 14.) The undisputed facts also show that Mr. Popsceu and Plaintiff had been working for Defendant for a comparable amount of time—Mr. Popsceu was hired just over a month before Plaintiff. (DSOF, Exs. 4, 15.) Mr. Popescu was also informally coached, and reportedly overcame performance issues. (DSOF ¶ 16.) Likewise, Plaintiff's performance review states that she "seeks coaching and readily adopts what she learns and is advised." (DSOF, Ex. 17 at 7.) And Plaintiff received the same score as Mr. Popescu on her performance review. (DSOF, Exs. 17, 18.)

The evidence thus creates a dispute of material fact about whether Mr. Shepard treated similarly situated employees outside of Plaintiff's protected class more favorably. Because Plaintiff has provided evidence to create genuine issues of material fact as to whether she suffered an adverse employment action, whether she was performing to Defendant's legitimate expectations, and whether similarly situated employees were

treated more favorably, she meets her burden at this stage of establishing a *prima facie* claim of race and sex discrimination. *McDonnell Douglas*, 433 U.S. at 802–05; *Celotex*, 477 U.S. at 323.

### 2.   Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for the Adverse Employment Action

The burden then shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 433 U.S. at 802. As discussed *supra*, Defendant has met its burden by articulating that Plaintiff was terminated due to performance issues, and also because Plaintiff failed to meet Defendant's expectation of honesty when she failed to provide complete "documentation" to Ms. Everett, and when Ms. Everett's investigation failed to corroborate her version of events.

Likewise, the doctrine of same actor interference supports Defendant's arguments. Under the doctrine of same actor inference, "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (1996). This doctrine is based on the idea that there will rarely be sufficient evidence that "…the employer's asserted justification is false when the actor who allegedly discriminated against the plaintiff had previously shown a willingness to treat the plaintiff favorably." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1097 (9th Cir. 2005).

Defendant argues that the inference applies because Mr. Shepard was involved in both Plaintiff's promotion to Team Lead and her termination. (Mot. at 11; DSOF ¶¶ 10-12.) In her Response, Plaintiff argues that there is "no question that Shepard swung wildly back and forth" in how he treated her, but suggests that the "same actor inference is negated by intervening events," including her July 12, 2018 complaint to Mr. Nettles and her July 11, 2018 complaint to Ms. Crawley, which Ms. Crawley shared with Mr. Shepard on January 4, 2019. (Resp. at 14.)

The same-actor inference is a "strong inference" that the Court must take into account in ruling on Defendant's Motion for Summary judgment. *Bradley*, 104 F.3d at 271. The Court must consider whether Plaintiff has made out the strong case of bias necessary to overcome this inference.

### 3.   Plaintiff Has Shown that Defendant's Reason for the Adverse Employment Action Could be Pretext

An employee can prove pretext either: (1) "directly, by showing that unlawful discrimination more likely motivated the employer"; or (2) "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002)). "[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Chuang,* 225 F.3d at 1127.

Plaintiff points to evidence to rebut both of Defendant's proffered reasons for her termination. As discussed above, the fact that Plaintiff received a 4.2 out of 5.0 on her performance review—the same score as her peers—is sufficient to show that Defendant's claim that Plaintiff was terminated for performance issues is internally inconsistent. (Resp. at 9; DSOF ¶ 26, Ex. 17.) The accounts surrounding Plaintiff's alleged failure to provide complete documentation to Ms. Everett are also rife with genuine issues of material facts.[5] (*See supra* at 12-13.) Further, Ms. Everett indicated that the decision to terminate Plaintiff

---

[5] Defendant attempts to discredit Plaintiff's arguments concerning the shifting reasons for her discharge. (Mot. at 14.) Specifically, Defendant states that its shifting reasons for Plaintiff's termination are not incompatible and are therefore insufficient to defeat summary judgment. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1997). However, in *Godwin*, the Ninth Circuit held that "[a]lthough 'shifting explanations are acceptable when viewed in the context of other surrounding events . . . such weighing of the evidence is for a jury not a judge." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1988), quoting *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997). Because these questions are for the jury, the Court does not consider Defendant's "shifting explanations" arguments in the context of either Plaintiff's discrimination or retaliation claims.

would have been up to the "business" (which includes Mr. Shepard) even though Defendant initially asserted that Ms. Everett was the ultimate decision-maker. (Resp. at 11; PSOF ¶¶ 73, 74, 82, 84, Ex. G.) While none of the facts discussed above are direct evidence of pretext, each works to establish pretext indirectly by calling into question the credibility of Defendant's proffered reasons for Plaintiff's termination.

Given the evidence of Mr. Shepard's comments and behavior—presented as part of Plaintiff's *prima facie* claim and discussed above—Plaintiff has properly raised a genuine issue of material fact regarding the truth of Defendant's explanation for her termination. *Chuang*, 225 F.3d at 1127. The evidence is also sufficient to rebut the same-actor inference. For example, although Mr. Shepard was involved in Plaintiff's promotion to Team Lead, Plaintiff also testified that he told her that she was promoted because of diversity and inclusion. (PSOF ¶¶ 58, 93.) Plaintiff was never asked about this comment during Ms. Everett's investigation, despite that fact that it was in her January 7, 2019 complaint. (DSOF, Ex. 36.)

Plaintiff also testified about an incident where Ms. Bereal (African American, female) was coming into town the same day as a luncheon in the conference room across from Mr. Shepard's office. (Patocs Dep. 96:17-19.) Foods at the luncheon had included items such as fried chicken and sweet tea, and Mr. Shepard said something effect of, "[Ms. Bereal] is black and we can't have a meeting with black food out in front of the conference room." (Patocs Dep. 97:10-12.) Plaintiff claims that Mr. Shepard also alluded to her race, saying something like "you should know this." (Patocs Dep. 97:8.) Mr. Shepard acknowledges that the incident took place, although his telling of it differs from that of Plaintiff:

> I am aware that one of the incidents Plaintiff raises in this lawsuit involves me trying to get fried chicken and collard greens cleaned up before a Cultivate meeting in the conference room outside of my office at the time. During that incident, I never referred to fried chicken as "black food." I was worried that the food remnants outside a Cultivate meeting could be perceived as racist and was attempting to explain to the Team Leads that it could be perceived as racist. To me, it was a teaching moment for the Team Leads since I was having them spend a significant amount of time learning about diversity and inclusion at that time.

(Shepard Dec. ¶ 34.) While Defendant points out that other Team Leads deny witnessing any inappropriate behavior or comments, Plaintiff maintains that many of Mr. Shepard's statements were made without any witnesses present. (PSOF ¶¶ 68-69.)

Thus, a reasonable fact-finder could find that race or sex was a "motivating factor" in Defendant's decision-making. 42 U.S.C. 2000e-2(m). Plaintiff has met her burden of proof for showing pretext at the summary judgment stage. Plaintiff has presented evidence that creates a genuine issue of material fact as to whether Defendant discriminated against her because of her sex or race. 42 § U.S.C. 2000e-2(a)(1). Summary judgment is not appropriate for Plaintiff's Title VII race or sex discrimination claim. *Celotex*, 477 U.S. at 323.

### 4. Plaintiff Cannot Establish a *Prima Facie* Case of 42 U.S.C. § 1981 Race Discrimination

On the other hand, a reasonable fact-finder could not find that race was *the* motivating factor in Defendant's decision-making, as required under 42 U.S.C. § 1981. *Compare Comcast Corp. v. Nat'l Assn. of African American-Owned Media*, 140 S. Ct. 1009 (2020) with *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020); see also *Arevalo-Carrasco v. Middleby Corp.*, 851 F. App'x 628, 630–31 (7th Cir. 2021) (discussing *Comcast* and *Bostock* and finding "[u]nder § 1981, the race-or ethnicity-based discrimination must have been the determinative reason for his firing. If discrimination were merely one reason for his termination, Arevalo could still prevail under Title VII's 'motivating factor' standard.").

Defendant has presented evidence that other African Americans were involved in employment decisions concerning Plaintiff. (DSOF ¶¶ 9, 31, 77.) Ms. Everett recommended Plaintiff's discharge, and the "business" (which included Mr. Shepard) signed off on it, but as Defendant points out, so did Ms. Bereal, an African American female. (DSOF ¶¶ 63, 77.) "When a decision maker is in the same [protected] group as the employee complaining about an adverse decision, the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision

complained about." *Jackson v. Foodland Super Mkt., Ltd.*, 958 F. Supp. 2d 1133, 1146, (D. Haw. July 25, 2013) (internal quotations omitted).

While Plaintiff has met the burden of proof to show that race or sex may have been a motivating factor in her termination, as discussed *supra*, she falls short on her 42 U.S.C. § 1981 claim.

### B.    Plaintiff's Retaliation Claims

Title VII also makes it an unlawful employment practice for an employer to retaliate against an employee because she has opposed any practice made unlawful by Title VII or because she has made a charge, testified, assisted, or participated in any manner in an investigation under Title VII. 42 U.S.C. § 2000e–3(a).

#### 1.    Plaintiff Can Establish a *Prima Facie* Case of Title VII and 42 U.S.C. § 1981 Retaliation

The *McDonnell Douglas* burden-shifting framework may also be applied to Title VII retaliation claims. *See Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 784 (9th Cir. 1986.) A plaintiff may establish a *prima facie* case of retaliation by showing that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Finally, the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretext for a discriminatory motive. *Id.*

##### a.    Protected Activity

A plaintiff in a retaliation claim must show that she engaged in a statutorily protected activity, such as opposing unlawful employment discrimination directed against employees protected by Title VII. *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). "Courts have not imposed a rigorous requirement of specificity in determining whether an act constitutes 'opposition[.]'" *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983). "When an employee reasonably believes that discrimination exists,

opposition thereto is opposition to an employment practice made unlawful by Title VII even if the employee turns out to be mistaken as to the facts." *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978). "[A] person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion[.]" *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 555 U.S. 271, 277 (2009). "Making an informal complaint to a supervisor is . . . a protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).

Defendant argues that Plaintiff's complaints to Ms. Crawley and Mr. Nettles in July 2018 do not constitute engagement in protected activity because both Ms. Crawley and Mr. Nettles were subordinate to Mr. Shepard and neither was Plaintiff's supervisor.[6] (Mot. at 13; DSOF ¶¶ 29-30.) Although it is unlikely that Plaintiff's complaint to Ms. Crawley, a Team Manager only one level above Plaintiff who was not responsible for supervising Plaintiff, was a protected activity, there is evidence to support Plaintiff's claim that Mr. Nettles operated in a supervisory capacity. (PSOF ¶ 30.) Mr. Nettles contends that he was never Plaintiff's "direct supervisor," but as a Client Services Director, Mr. Nettles was three levels above Plaintiff. (Nettles Dec. ¶ 11; PSOF ¶ 30.) Both parties agree that he helped Mr. Shepard run the Team Lead program and he was present during Plaintiff's coaching sessions. (DSOF ¶¶ 9, 35; Ex. 23.) When Plaintiff requested to work from home during the internal investigation, it was suggested that she report to Mr. Nettles instead of Mr. Shepard, indicating his supervisory role. (DSOF ¶ 60.)

However, the Court also notes that there is a dispute as to the content of Plaintiff's complaint to Mr. Nettles. Mr. Nettles explained:

---

[6] Defendant cites only a case from the Fifth Circuit, addressing a hostile work environment claim, to support this argument. (Mot. at 13, citing *Williams v. Barnhill's Buffet Inc.*, 290 F. App'x 759, 763 (5th Cir. 2008).) Defendant's parenthetical could even be construed as misleading: it reads "informal complaints to co-workers insufficient," but the full context makes clear that informal complaints to co-workers were insufficient to put the Defendant on notice of the need to address allegedly harassing behavior. *Williams*, 290 F. App'x at 763. In other words, the Fifth Circuit was not considering protected activity in the context of a retaliation claim. Plaintiff's briefing was equally unhelpful. The Court's own research yielded several relevant cases from this Court, dozens of relevant cases from this District, and hundreds of relevant cases from the Ninth Circuit at large.

Plaintiff came to me on one occasion with concerns about Shepard. She said that Shepard had called her "crazy" during a huddle, in front of the other Team Leads. At no time during this conversation with Plaintiff did I yell at her or otherwise snap at her. I did not tell Plaintiff to stop talking or say that what she was saying was very dangerous. Plaintiff never told me that Shepard "cursed her out" or anything to that effect. At no time during the conversation did Plaintiff indicate or suggest that she believed Shepard's alleged "crazy" comment was due to her race, sex, or any other protected characteristic. I asked Plaintiff if she wanted to go to Human Resources or try to address it directly with Shepard. She said she wanted to address it directly with Shepard.

(Nettles Dec. ¶ 43.) Plaintiff, on the other hand, testified that she told Mr. Nettles "that the guys don't get treated the same as I do, and that nobody else looks like me, and that I am being treated differently." (Patocs Dep. 90:1-3.) Plaintiff claims that Mr. Nettles "snapped" at her, and told her to "stop talking," and that what she was saying was "very dangerous." (Patocs Dep. 90:5-8.) No other witnesses were present. (Patocs Dep. 89:23-24.)

Plaintiff has presented evidence that creates a genuine issue of material fact as to whether her complaint to Mr. Nettles was a protected activity. Thus, the first prong of her retaliation claim is satisfied.

### b.    Adverse Employment Action

As discussed above, for a discrimination claim, an adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment. *Davis*, v. *Team Elec. Co.*, 520 F.3d at 1089. For a retaliation claim, a plaintiff must show that the alleged adverse employment actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Ninth Circuit construes adverse employment actions broadly and has found that a "wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray*, 217 F.3d at 1240.

To reiterate, Defendant characterizes Plaintiff's alleged adverse actions as follows[7]: (1) the "coaching and scrutiny" Plaintiff experienced; (2) Plaintiff's assignment to a less-desirable desk space; (3) Plaintiff's assignment to phone duty; (4) Defendant's failure to

---

[7] The Court does not include the second item from Defendant's original list, as Plaintiff does not allege that this action was retaliatory. (Mot. at 7; Resp. at 13.)

promote Plaintiff; (5) Plaintiff's placement on paid leave pending the internal investigation; (6) an inadequate internal investigation; (7) Plaintiff's assignment to the SA Project, and later removal from that project; and (8) Plaintiff's termination. (Mot. at 7.)

To begin, the parties have already agreed that Plaintiff's termination may constitute an adverse action. (*See* Mot. at 7.) Thus, the Court does not discuss it in depth here. The Court has also determined that several of Plaintiff's alleged actions were not adverse as a matter of law for the purposes of her discrimination claim. Likewise, the coaching and scrutiny Plaintiff experienced, and Defendant's inadequate internal investigation are not adverse actions for the purposes of her retaliation claim. *See Signal v. Gonzalez*, 430 F. Supp. 2d. 528, 541 (D.S.C. 2006) ("Increased scrutiny of an employee under the general policies and disciplinary procedures governing her employment is . . . not an adverse employment action."); *Cozzi*, 787 F. Supp. 3d at 1069 ("[T]he failure to conduct an adequate investigation after an alleged act of discrimination . . . cannot be considered an action that reasonably would deter an employee from engaging in the protected activity under Title VII.").

Additionally, Plaintiff's assignment and removal from the SA Project was not an adverse action for the purposes of Plaintiff's retaliation claim, and nor was her reassignment to a desk near the bathroom. *See Anderson v. Arizona*, No. CV06-00817-PHX-NVW, 2007 WL 1461623, at *15 (D. Ariz. May 16, 2007) (finding no adverse employment action where additional demands and requests, while onerous, fell within the plaintiff's job title); *Smith v. County of Humboldt*, 240 F. Supp. 2d 1109, 1121 (N.D. Cal. 2003) (finding no adverse action where the plaintiff was reassigned to a desk near the door).

However, while Defendant's failure to promote Plaintiff failed to satisfy the standard for an adverse action for her discrimination claim, a reasonable jury could find that it constitutes an adverse action for the purposes of her retaliation claim, because it could dissuade a reasonable worker from making or supporting a charge of discrimination. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("Among those

employment decisions that can constitute an adverse employment action are . . . refusal to consider for promotion.").

Plaintiff's assignment to phone duty can also be construed as a retaliatory adverse action. *See Burlington*, 548 U.S. at 70-71 ("Almost every job category involves some responsibilities and duties that are less desirable than others. Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable.").

Finally, the Ninth Circuit has found that under certain circumstances, placing an employee on paid leave can constitute an adverse employment action for a retaliation claim. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013). Thus, a reasonable jury could also find an adverse action in Plaintiff's placement on paid leave pending the internal investigation.

### c.   Causation

In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court decided that a plaintiff has a heightened standard for proving causation in retaliation claims—she must show that her engagement in a protected activity was a "but-for" cause of the defendant's imposition of an adverse employment action. 570 U.S. 338, 362 (2013).

Plaintiff presents no direct evidence that her complaints were the but-for cause of an adverse employment action. However, she alleges that that the causation prong is satisfied based on the temporal proximity of her complaints and Defendant's adverse actions, culminating in her termination. (Resp. at 16.) Defendant argues that, despite the temporal proximity, Plaintiff's case must fail on the causation prong because Plaintiff's performance issues are significant intervening events that break the chain of causation. (Mot. at 13-14 (citing *Lee v. Eden Medical Center*, 690 F. Supp. 2d 1011, 1026 (N.D. Cal. 2010) (same-day temporal proximity insufficient where an intervening event occurred)).)

Above, the Court found that Plaintiff's first potential protected activity was her July 12, 2018 complaint to Mr. Nettles. (PSOF ¶ 53.) A few months later, in the fall or

winter, Plaintiff was told not to bother applying for the Team Manager position. (DSOF ¶¶ 41, 46.) She was placed on phone duty January 7, 2019, shortly after she was told not to apply for the promotion. (PSOF ¶ 50.) The Court finds this temporal proximity sufficient to satisfy Plaintiff's burden at this stage.

Even if a jury does not find that Plaintiff's complaint to Mr. Nettles was a protected activity, she can still satisfy the causation prong. Plaintiff made her complaint to Ms. Bond on January 7, 2019. (DSOF ¶ 58.) She was placed on paid leave on January 11, 2019, and her access to all ADP systems was cut off. (Patocs Dep. 210:13-211:7.) Plaintiff was terminated on January 22, 2019. (PSOF ¶ 73.) As the Court has discussed throughout this Order, Plaintiff has provided evidence to show that raising the issue of discrimination was the but-for cause of the investigation, and therefore also the but-for cause of her placement on paid leave. In fact, one alleged reason for her termination was the fact that Plaintiff "misled" the investigation.

For these reasons, the Court finds that the causation prong is met.

### 2. Defendant Has Articulated Legitimate, Non-Discriminatory Reasons for the Adverse Employment Action

Defendant has articulated legitimate, non-discriminatory reasons for each of its adverse employment actions against Plaintiff. As discussed above, Defendant asserts that its failure to promote Plaintiff, as well as her termination, were justified based on her poor performance and alleged dishonesty. Defendant also claims that Plaintiff's assignment to phone duty was not retaliatory, but was due to an increased call volume, and Plaintiff was not alone in being assigned to phone duty. (Mot. at 11; DSOF ¶ 50.) Finally, Defendant contends that placing Plaintiff on paid leave was the only possible way for it to navigate the situation—Plaintiff was uncomfortable reporting to Mr. Shepard and Mr. Nettles, and wanted to work from home, but Defendant lacked the ability to have Plaintiff work from home at that point in time. (DSOF ¶¶ 60-61, Ex. 1, Declaration of Andrea Bereal ("Bereal Dec.") ¶ 57; Ex. 5, Declaration of Sonya Everett ("Everett Dec.) ¶¶ 41.)

### 3. Plaintiff Has Shown that Certain of Defendant's Reasons Could be Pretext

The Court applies the same standard for pretext to Plaintiff's retaliation claim that it used for her discrimination claim, discussed *supra*.

Plaintiff points to evidence to rebut Defendant's proffered reasons for its adverse actions. As discussed above, Plaintiff's positive performance review is sufficient to show that Defendant's claim that Plaintiff was not promoted, and eventually terminated for performance issues, is internally inconsistent. (Resp. at 9; DSOF ¶ 26, Ex. 17.) There are also genuine issues of material fact surrounding Plaintiff's alleged failure to provide complete documentation to Ms. Everett. (*See supra* at 12-13.)

Plaintiff has also presented evidence that Defendant's proffered reason for placing her on paid leave could be pretext. Plaintiff wanted to work from home or work on a different floor and Defendant claimed this was not a possibility. Plaintiff testified that she had previously worked from home "many times" as a Team Leader. (Patocs Dep. 177:9-24.) Further, just a year later, all of ADP's employees were working from home due to the Covid-19 pandemic. (Bereal Dec. ¶ 57.)

On the other hand, Plaintiff fails to demonstrate that Defendant's reasons for placing her on phone duty were pretextual. As Ms. Bereal explained, the needs of clients sometime necessitate placing Team Leads on phone duty—at year end it was "not uncommon" for ADP to have 400 clients calling in and waiting on hold for two or more hours. (Bereal Dec. ¶ 51.) Plaintiff has not presented evidence to show that this reasoning is false or inconsistent.

For the foregoing reasons, genuine issues of material fact remain, and summary judgment is not appropriate for Plaintiff's Title VII or 42 U.S.C. § 1981 retaliation claims.

### C. Harassment Claims

To state a Title VII or 42 U.S.C. § 1981[8] claim of racial or sexual harassment based on a hostile work environment, Plaintiff must raise a triable issue of fact as to whether

---

[8] In analyzing a claim under Section 1981, "the legal principles [that] guid[e] a court in a Title VII dispute apply with equal force." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797

(1) Defendant subjected her to verbal or physical conduct based on her race or sex; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Surrell*, 518 F.3d at 1108. "Allegations of a racially hostile workplace must be assessed from the perspective of a reasonable person belonging to the racial . . . group of the plaintiff." *Id.* In assessing the third factor, the conduct must be severe and pervasive enough to both subjectively and objectively create an abusive environment. *Id.* While there is no exact test to determine whether the environment is objectively abusive, factors to consider include the frequency and severity of the conduct. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23 (1993). Although "an isolated incident of harassment by a co-worker will rarely . . . give rise to a reasonable fear" that the harassment is a permanent condition of employment, an employer may be liable if the plaintiff shows that she feared she "would be subject to such misconduct in the future because . . . [defendant] tolerated" the harasser's conduct. *Brooks v. City of San Mateo*, 229 F.3d 917, 923–24 (9th Cir. 2000). "If the employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action," one may infer that the employer has "'adopt[ed] the offending conduct.'" *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001) (alteration in original) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998)). However, the employer cannot be liable for "misconduct of which it is unaware." *Id.*

### 1. Plaintiff cannot establish a *prima facie* case of Title VII and 42 U.S.C. § 1981 racial and sexual harassment.

Plaintiff alleges that the following comments demonstrate that she was subjected to harassment: (1) Ms. Bereal telling her on one occasion, "[w]ell, you know, you have a lot of things against you. You're a woman of color. You're very young. How are you going to get people to respect you?"; (2) Mr. Nettles saying on one occasion, "I'm not letting, like, a couple of black girls cat fight in my office;" (3) Mr. Shepard showing the team leads an SNL skit that "characterized black people" on one occasion; (4) Mr. Shepard referring to

---

(9th Cir. 2003). Thus, the standard for establishing a hostile work environment claim is identical whether the claim arises under Section 1981 or Title VII.

fried chicken as "black food" on one occasion; (5) Mr. Shepard stating on one occasion that Plaintiff received her Team Lead position because of diversity and inclusion efforts; (6) Mr. Shepard saying on one occasion that he thinks black women are very attractive and that he loves natural hair; (7) Mr. Shepard saying on one occasion that he had missed the opportunity to see "two black girls duking it out;" and (8) Mr. Shepard calling Plaintiff his "work wife" on 5-10 occasions. (Mot. at 16 (summarizing Plaintiff's allegations).)

Defendant argues that Plaintiff's allegations fall short of establishing a *prima facie* case of sexual harassment. (Mot. at 15.) According to Defendant, even if all of Plaintiff's allegations are taken as true, she cannot show that the harassment was severe or pervasive enough to alter the conditions of her employment. (Mot. at 15, citing *Vasquez*, 349 F.3d at 642.)

To support her racial and sexual harassment claim, Plaintiff highlights the fact that she asked Ms. Everett to investigate the "daily abuse" she experienced as Mr. Shepard's subordinate. (Resp. at 16; PSOF ¶ 72.) She claims that Mr. Shepard's alleged comments and actions, which the Court has discussed throughout this Order and does not repeat here, created an "objectively hostile work environment." (Resp. at 16-17.)

The Court agrees with Defendant. Not only is Plaintiff's argument conclusory and unsupported by any case law, but her allegations also consist of sporadic comments over the course of a nearly one-year period. Courts in the Ninth Circuit have consistently held that such comments are not sufficient for a hostile work environment claim to survive. *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (no hostile work environment where on several occasions the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of the plaintiff, and directly referred to the plaintiff as "Medea").

## 2.    Defendant's *Faragher-Ellerth* Affirmative Defense

Defendant also moves for summary judgment on Plaintiff's hostile work environment claim pursuant to its twelfth affirmative defense. Employers may assert the *Faragher-Ellerth* defense to liability and damages if they are able to prove that: (1) the

employer exercised reasonable care to prevent and correct any harassing behavior promptly; and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid harm. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Because the Court dismisses Plaintiff's harassment claim for the reasons outlined above, it does not reach Defendant's twelfth affirmative defense.

**IT IS THEREFORE ORDERED** granting in part Defendant's Motion for Summary Judgment and dismissing Plaintiff's 42 U.S.C. § 1981 discrimination claim and Plaintiff's Title VII and 42 U.S.C. § 1981 harassment claims. (Doc. 42.)

**IT IS FURTHER ORDERED** denying Defendant's Motion for Summary Judgment as to Plaintiff's Title VII discrimination claim and Plaintiff's Title VII and 42 U.S.C. § 1981 retaliation claims. (Doc. 42.) These claims will proceed to trial. The Court will set a pretrial status conference by separate Order.

Dated this 12th day of July, 2022.

_____
Honorable John J. Tuchi
United States District Judge